## ZORA H. BRINSFIELD vs. NANNIE B. HOWETH

*Slander—Inducement in Declaration—Words Actionable or Not Per se —Privileged Communication—Evidence—Local Meaning of Words —Instructions to Jury—Stay of Proceedings in Second Suit When Costs of Former Suit Not Paid.*

In an action of slander, if the words alleged in the declaration to have been spoken concerning the plaintiff are ambiguous, or do not naturally bear the meaning attributed to them by the plaintiff so as to be actionable, then the declaration must by way of inducement or colloquium set forth the circumstances under which the words were uttered so as to show that they imputed to the plaintiff the particular offense. But that cannot be done by an *innuendo*.

A declaration alleged in one count that the defendant said of the plaintiff: "she is a fast girl and not fit to teach school;" "she is of loose character and not fit to teach school;" and in another count that defendant said of plaintiff: "I am sorry I did not strap her when I had the chance." The *innuendo* after each allegation was that the defendant thereby imputed a want of chastity to the plaintiff. No averment was made that by the local understanding such words had the meaning ascribed to them by the *innuendo*. *Held*, that these words do not naturally mean that the plaintiff was unchaste but may refer to habits or imprudent conduct other than unchastity, and the *innuendo* cannot make such words actionable *per se* under Code Art. 88, sec. 1, which provides that all words spoken falsely touching the reputation for chastity of any woman shall be deemed slander.

To say of an unmarried woman that she is fast and had become pregnant is actionable *per se*.

While a charge was pending in Court against the plaintiff, a school teacher for an assault on one of her pupils, the State's Attorney asked the defendant what he knew about the plaintiff, and in reply the defendant uttered the words alleged in this action to be slanderous, but there was no evidence of express malice on his part. *Held*, that the statement so made was privileged.

At a time when the defendant was a candidate for appointment by the .Governor as School Commissioner, he said to another candidate that he objected to the re-appointment as Commissioner of a certain man because he had appointed fast girls as school teachers and that one of them, the plaintiff, was fast and had become pregnant. *Held*, that this statement was not privileged.

In an action of slander where the declaration alleged that the defendant had said concerning the plaintiff that he was sorry he had not strapped her when he had the chance, a witness was asked if he knew the meaning of the word "strapped" in that neighborhood when used in reference to a female. The witness answered: "Yes, to have connection with a woman." *Held*, that a proper foundation had not been laid for the production of this evidence, because, when the language alleged to be slanderous is in itself of doubtful import, and the plaintiff seeks to show that it has a peculiar meaning, the witness should first be asked *whether there be any peculiar meaning expressed by the words in* question, and if the answer is in the affirmative, he should then state the means and extent of his knowledge upon the subject of the peculiar meaning, and if it appears to be adequate he may then be asked: "what did you understand by the words employed?"

For the same reasons a witness cannot be asked: "what did you understand when the defendant said, 'she is a fast girl and was not fit to teach school,' that it was an attack upon her chastity?"

In an action of slander where the declaration alleged the utterance by the defendant of certain words imputing a lack of chastity to the plaintiff, it is error to instruct the jury that if they find that the defendant, before and after the speaking of the words set out in the declaration; spoke other words to other persons imputing unchastity to the plaintiff, the jury may consider these other words in determining the question of malice on the part of the defendant.

Whether the proceedings in a second suit, for the same cause of action as in a former suit which was dismissed, should be stayed until the costs in the first suit are paid, is generally a matter within the discretion of the trial Court.

*Decided January 8th, 1908.*

Appeal from the Circuit Court for Wicomico County (Holland, J.)

*Plantiff's 2nd Prayer.*—If the jury shall find from the evidence that the defendant, in the town of Cambridge, Maryland, on or about the month of April, 1905, in the presence and hearing of Wm. N. Andrews and S. Spry Andrews, spoke of the plaintiff the words "She is a fast girl and not fit to teach school" or the words "She is a girl of loose character and not fit to teach school," and meaning and imputing thereby a want of chastity in the plaintiff, and was so understood by said hearers, then their verdict must be for the plaintiff; and if they so find for the plaintiff, they may award such damages as they in their judgment shall think justified by all the (facts) and circumstances of the case, not only for the purpose of giving compensation for the injury done to the feelings and character of the plaintiff, but also for the purpose of adequately punishing the conduct of the defendant, (and if they shall find further evidence that the words spoken proceeded from expressed malice or ill will to the plaintiff) and in assessing such damages they may consider the means and wealth of the defendant, and his rank and influence in the community in which the plaintiff and defendant live. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury shall believe from the evidence that the defendant, in or about the month of February, 1906, in the county of Dorchester, in the presence and hearing of the witness, Benjamin F. Johnson, spoke of the plaintiff the words, as set out in the second count, "Mr. Smith has appointed fast girls as school teachers and one of them became pregnant," and on being asked by said Johnson which one this was, said: "That was this Nannie Howeth," then their verdict must be for the plaintiff. (*Granted.*)

*Plaintiff's 6th Prayer.*—If the jury find for the plaintiff and shall believe that the defendant did at other times, before or after the speaking of the words set out in the declaration, and in the hearing of other persons, speak and utter other words of and concerning the plaintiff, and imputing to her a want of chastity, then they may consider those other words in considering the question of malice on the part of the defendant. (*Granted.*)

*Defendant's 7th Prayer.*—If the jury believe from the evidence, that the defendant spoke of and concerning the plaintiff the words set out in the first count of the *nar*, to-wit: 1st. "She is a fast girl and not fit to teach school." 2nd. "She is a girl of loose character and not fit to teach school." 3rd. "I did say that she was of loose character and not fit to teach school," or that he spoke of the plaintiff the words in either of said sub-divisions as in said count set forth, and shall further find that the words were spoken to Wm. N. Andrews, State's Attorney of Dorchester County in response to inquiries made by the said Wm. N. Andrews in his official capacity, in the examination or investigation of a case, then pending in the Circuit Court for Dorchester County, wherein the said plaintiff was charged with an assault, then their verdict must be for the defendant, unless they further find that the said words were spoken with express or actual malice on the part of the defendant, and the burden of proving such express or actual malice is upon the plaintiff. (*Rejected.*)

*Defendant's 10th Prayer.* If the jury's verdict is for the plaintiff, under the second count of the plaintiff's declaration, then they cannot allow punitive damages for same, unless they further find from the evidence that the words given in evidence under the said count, were spoken by the defendant of the plaintiff with actual malice towards her. (*Rejected.*)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker and Burke, JJ.

*Alonzo L. Miles* (with whom were *John R. Pattison* and *Toadvin & Bell* on the brief), for the appellant.

*F. H. Fletcher* (with whom were *Ellegood, Freeny & Wailes* and *P. L. Goldsborough* on the brief), for the appellee.

Burke, J., delivered the opinion of the Court.

This is an action of slander in which the appellee recovered a judgment of four thousand dollars against the appellant in

the Circuit Court for Wicomico County to which Court the case had been removed from Dorchester County where it was originally instituted.    The plaintiff is a young unmarried woman, a resident of Dorchester County, and was engaged in teaching in the public schools of 'that county.    Sections one and two of Article 88, Code 1904 provides that all words spoken falsely and maliciously touching the character or reputation for chastity of any woman, whether single, or married, and tending to the injury thereof shall be deemed slander, and shall be treated as such in the several Courts of law in this State; and any woman, whether single or married, whose character, or reputation as a woman of chastity may be traduced or defamed by any person may sustain an action of slander in her own name against such person.    The appellee had instituted a prior suit for slander against the appellant in the Circuit Court for Dorchester County, and this case was also removed to the Circuit Court for Wicomico County where it was tried, and at the conclusion of the plaintiff's case the Court granted a prayer that the plaintiff had offered no evidence legally sufficient to entitle her to recover.    Whereupon the plaintiff submitted to a judgment of *non pros.*.    Two of the causes of action in this case are the same as set out -in the former declaration.

The declaration in this case contains three counts, and the appellant demurred to each count.    This demurrer was over-ruled, and issue was joined upon the general issue plea.    The plaintiff brought this suit without having first paid the costs in the former case, and the defendant moved the Court to stay all further proceedings in this cause until the costs of the former action were paid by the plaintiff.    This application was denied.

During the trial of the case seventeen bills of exceptions were taken to the rulings of the Court upon questions of the admissibility of evidence; the eighteenth exception relates to the action of the Court upon the prayers and upon the special exceptions filed by the defendant to the granting of the plaintiff's sixth and eighth prayers.    One of the questions in the case is as to whether certain statements, which will be men-

tioned later, alleged to have been made by the defendant were privileged communications.

The two important questions in the case are, first: Does the declaration in any of its counts set forth words which are *per se* actionable? Secondly, were any of the statements alleged to have been made by the defendant privileged? The solution of these questions must be found in the application of well settled rules to the averments of the *narr.*, and to the facts disclosed by the record. The declaration contains three counts, in each of which there is an *innuendo* and a proper *colloquium*. There is, however, no prefatory inducement, or statement of the circumstances under which the words were spoken, and no averment of extrinsic matter to show that the words set forth in each count had a local, provincial, or peculiar neighborhood meaning.

The alleged defamatory words set out in the first count are:

1st. "She," the plaintiff, "is a fast girl and not fit to teach school."

2nd. "She," the plaintiff, "is a girl of loose character and not fit to teach school."

3rd. "I did say that she," "the plaintiff," "was of a loose character and not fit to teach school."

The words laid in the second count are:

"He" (the said W. Grayson Smith), "has appointed fast girls as school teachers and one of them became pregnant," (meaning pregnant with child), and on being asked which teacher it was that had become so pregnant, the defendant replied, "Why that was this Nannie Howeth," (meaning the plaintiff), and the defendant thereby then and there meaning and imputing a want of chastity to the plaintiff. Those set forth in the third count are: "I," (meaning the defendant), "am only sorry for one thing that I," (meaning the defendant), "did not strap" (meaning have carnal intercourse with) her," (meaning the plaintiff), when "I," (meaning the defendant) "had the chance." The *innuendoes* in the first and second counts are that the defendant meant to impute a want of chastity to the plaintiff; and that by the use of the words declared on in the

third count the defendant meant that at some time in the past the plaintiff had consented, or would have consented to have sexual intercourse with himself, and that he thereby meant and imputed to the plaintiff a want of chastity.

If the declaration is not otherwise good, the *innuendoes* cannot make it good. They cannot add to, or enlarge the sense of the words used, and if the alleged defamatory words do not constitute slander in themselves, the *innuendoes* cannot enlarge or add to their legal meaning and effect. The *innuendo* is merely a form, or mode of introducing explanation; it serves to point out some matter already expressed, it may apply what is already expressed, but cannot enlarge the sense of the previous words. The legal effect of the *innuendo* is a question of law which arises under the demurrer. This Court said in *Lewis* v. *The Daily News Company*, 81 Md. 472: "Upon demurrer it is always the province of the Court to determine whether the words charged in the declaration amount in law to libel or slander. Dorsey v. *Whipps*, 8 Gill, 462; *Haines* v. *Campbell*, 74 Md. 158; *Avirett* v. *The State*, 76 Md. 510. It is equally a matter of law as to whether an *innuendo* is good; that is to say, whether it is fairly warranted by the language declared on, when that language is read, either by itself, or in connection with the inducement and colloquium, if there be an inducement and colloquium set forth. *Avirett* v. *State, supra*; *Solomon* v. *Lawson*, 8 Q. B. 828."

Mr. Chitty in his work on Pleading, *vol. 1, p. 400,* states the rule to be that: "If the libel or words do not *naturally* and *per se* convey the meaning the plaintiff wishes to assign to them, or are ambiguous and equivocal, and require explanation by reference to some *extrinsic matter* to show that they are actionable, it must be expressly shown that such matter existed, and that the slander related thereto."

In *Peterson* v. *Sentman*, 37 Md. 153, the words declared on were: "You," (meaning plaintiff) "are a bad woman, and keep a bad house, and I can prove it;" *innuendo*, meaning thereby to charge that the plaintiff was not a chaste woman, was a whore, and kept a common bawdy house. In considering

the legal effect of these averments the Court said: "The words, however objectionable they may be, admit of other constructions, which readily suggest themselves to the mind, than that given to them by the plaintiff. To say a person keeps a bad house may mean a disorderly house, or one that is dirty or comfortless. So indefinite is their meaning, that to render them a foundation of an action like the present, the declaration must set out such a statement of circumstances under which they were used, or of the subject matter of the conversation, as will indicate that they were applied in a sense imputing to the plaintiff the wrong complained of. But this, under the rule of pleading firmly established by all the authorities, must be done through a colloquium and not by way of *innuendo*, the only object of which is to point to and explain what has before been introduced in the declaration." In that case the Court held that the words "You keep a bad house" were not actionable, and in the absence of appropriate prefatory averments could not be made so by the *innuendo*.

In the case of *Clute* v. *Clute*, 101 Wis. 137 the words declared on were "you," the plaintiff meaning, "have been going with Edd. (meaning one E. C.) "You," the plaintiff meaning, matched him in the berry patch on the bluff, and here upstairs, and I saw you go up." The Court said: "The question arising is: Do the words set forth in the complaint charge sexual intercourse? We think not. Words are to be construed in the plain, popular sense in which people would naturally understand them. *Bradley* v. *Cramer*, 59 Wis. 309. We are not aware that the words "match," or "matched," has ever acquired the meaning of illicit or sexual intercourse. It is sometimes used as denoting honorable marriage, but the lexicographers go no further. If there was a local, or provincial use of the word which gave it the meaning contended for, or if there were extrinsic circumstances by reason of which it was so understood by the hearers at the time that words were uttered, these facts should be alleged by way of inducement. *Newell Slander and Libel* (*2nd ed.*) 603. The *innuendo* cannot enlarge the natual and ordinary meaning of the words."

If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts or circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. 13 *Ency. Pl. & Prac.*, 32. Words will not be construed to impute unchastity, if in their milder sense they may have another and more harmless meaning, unless it is made to appear by the averment of extrinsic facts that the defendant meant to traduce the character of the plaintiff for chastity.

Tested by these rules, the words declared on in the first and third counts of the declaration are not *per se* actionable. These words do not naturally and upon their face convey the meaning that the plaintiff is unchaste. They may refer to habits, or imprudent conduct other than unchastity, and unaccompanied by averments of local meaning of a grosser nature, they must be construed in their more innocent sense. The declaration sets up a claim for special damages sustained by reason of publishing the words alleged in each count. The allegation is that by reason of said publication the plaintiff "Lost her situation as teacher at Galestown, in said county, and was prevented from obtaining various other desirable situations as school teacher."

If the defendant by the use of language attributed to him meant to impute a want of chastity to the plaintiff, an averment may be introduced that by a local, or neighborhood understanding such words mean, or are understood to impute the meaning ascribed to them by the *innuendo.* Under such a declaration the plaintiff could prove "any extraordinary, or peculiar meaning expressed by the words in question." *Newbold & Sons* v. *Bradstreet*, 57 Md. 51. And could also prove in what sense the hearers understood the words. *Goldsborough* v. *Orem & Johnson*, 103 Md. 683. Although the words charged in the first and third counts are not in themselves actionable, under the averments of the *nar*, the plaintiff nevertheless would have been entitled under the claim for special damages to recover such damages in fact as she may have

sustained in consequence of their publication, and, except for the fact that the first count contains three distinct causes of action, we should hold the demurrers should have been properly overruled.   The demurrer to the first count was properly sustained, because that count is clearly bad for duplicity.   This defect, as well as the other to which we have adverted, may be cured by proper amendment.

2. We will now examine the question of qualified privilege which arises under several of the prayers.   The law upon this subject is well settled, especially in this State.   "If the facts are uncontroverted, it is the province of the Court to determine whether the publication is privileged.   If, however, the evidence is uncertain and conflicting, it is proper for the Court to instruct as to what facts amount to privilege, and leave it to the jury to determine whether those facts are proved."   13 *Ency. Pl. & Pr.*, 106; *Coffin* v. *Brown*, 94 Md. 195.   In the case of *Fresh* v. *Cutter*, 73 Md. 87, which in one of its features was similar to this, the plaintiff had been employed by the defendant, and after he had left the defendant's service and was about to enter that of a Mr. Allen, the defendant, voluntarily and without being requested, spoke the defamatory words declared on.   There was evidence in the case tending to show that Fresh honestly believed that it was his duty to tell Allen what he knew concerning the plaintiff; that he told Allen these things without being asked, honestly believing it was a duty he owed to his neighbor, and for the sole purpose of putting him on his guard.   The defendant testified that he had not been actuated by malice, or ill will, and that he had never had any bad feeling against the plaintiff.   In considering the question whether the statement made by Fresh to Allen, under the circumstances named, was a privileged one, this Court, speaking through JUDGE McSHERRY, said: "If privileged, all the authorities agree in holding that it is not absolutely or unqualifiedly, but only conditionally, so.   If falsely and maliciously made, it would be actionable.   Malice is the foundation of the action, and in ordinary cases is implied from the slander; but there may be justification from the occasion, and when this

appears an exception to the general rule arises, and the words must be proved to be malicious as well as false." *Beeler* v. *Jackson*, 64 Md. 593. This justification from the occasion arises, in the class of cases now being considered, when a communication is made "*bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, if made to a party having a corresponding interest or duty," although the communication "contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." * * * But the plaintiff has a right notwithstanding the privileged character of the communication to go to the jury, if there be evidence tending to show actual malice, as when the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff. * * * It follows from these principles that if the communication made to Allen was made in good faith without malice, in the honest belief of its truth, and under the conviction that it was duty which Fresh owed to Allen to make it; the words complained of would not be actionable, because privileged, though spoken voluntarily. It is equally clear that if the words spoken were known to be false and were maliciously spoken; or were voluntarily spoken to one to whom Fresh owed no duty in the sense heretofore mentioned, the words would be actionable, because not within the privilege."

The plaintiff offered evidence by William N. Andrews, the State's Attorney for Dorchester County, and by S. Spry Andrews, tending to prove the publication by the defendant of the words charged in the first count of the declaration; and by Benjamin F. Johnson to prove that the defendant published the words declared on in the second count. These are the statements which are claimed to be privileged. They were made under the following circumstances. In April, 1905, the defendant was talking to S. Spry Andrews in front of the

Court House in Cambridge, when he was approached by the
State's Attorney, who asked him about the case then pending
in the Court against the plaintiff for assault on one of her pupils,
a relative of the defendant.    In the course of this conversa-
tion about the case, the defendant is alleged to have spoken
the words set forth in the first count of the declaration.    He
was asked "about the young lady, Miss Nannie B. Howeth,"
and what he knew about the case, but he was not asked
about her virtue or chastity.    The defendant testified that he
did not remember exactly what he told the State's Attorney;
that he only told him what he had heard people say of her in
the community; that what he told him was in response to his
question, and that he did not mean to injure her in any way;
that he had no ill feeling against her at the time; and had no
intention of injuring or hurting the reputation of the plaintiff, or
her reputation as a teacher.

We think the statement made by the defendant to the
State's Attorney, under the circumstances named was privi-
leged; but we find nothing in the record to bring the state-
ment made to Mr. Johnson within the rules relating to privi-
leged communication.    That statement was made under
these circumstances.    Mr. Johnson testified that just before
going to Annapolis to see the Governor about the appoint-
ment of School Commissioners, the term of Grayson Smith,
the Commissioner in the defendant's district having expired,
as well as that of another Commissioner, and that he and the
defendant were applicants for appointment to the vacancies,
he had a conversation with the defendant about these appoint-
ments, and that the defendant objected to the re-appointment
of Grayson Smith, and said "that Grayson Smith had
appointed fast girls as school teachers and that one of them
had become pregnant;" I asked him who it was and he said
"this Nannie Howeth."    The defendant's account of this con-
versation was: "I was talking about the appointment of assist-
ant school teachers made by Mr. Smith.    I did not mean to
mention Miss Nannie Howeth.    I had reference to an assist-
ant teacher appointed at Eldorado.    What I told Mr. John-

son was that one of the teachers appointed by Mr. Smith at
Eldorado had become pregnant; Miss Nannie Howeth never
taught there, and Miss Nannie Howeth was never appointed
as teacher that I know of. I told him Bus Reid had come to
me, and said to me one of these teachers had become preg-
nant, and asked me if I could tell him where she could get
relieved; I told him I could not; I mentioned the name of the
girl, but it was not Miss Nannie Howeth."

This statement, under the principles stated in *Fresh* v. *Cut-
ter, supra*, was clearly not privileged. There is abundant evi-
dence in the record tending to show that the defendant was
actuated by express malice towards the plaintiff. The evi-
dence of the plaintiff's sisters alone shows that he had the
most vindictive and malicious feelings towards her. The
plaintiff's first prayer which told the jury that inasmuch as
the defendant had not pleaded the truth of the charges, they
must deal with the case upon the admission that she was not
guilty of any of the charges, was properly granted. Had the
clause "and if they shall find further from the evidence that
the words spoken proceeded from express malice, or ill
will to the plaintiff," which occurs in the plrintiff's second
prayer, followed immediately after the word "hearers;" and had
the declaration been framed upon the principles hereinbefore
stated, the prayer, under the facts in this record, would have
been free from objection.

The plaintiff's third prayer was properly granted. It is
based upon the statement alleged to have been made by the
defendant to Johnson, and as the publication, if made, was
slanderous *per se*, and not privileged, the prayer states the cor-
rect rule for the guidance of the jury. The plaintiff's fourth
and sixth prayers should have been refused. Her fourth
prayer allows a recovery if the jury should find that the
defendant admitted to Collison that he had used the words
charged in the first count. This acknowledgment was evi-
dence to support the averments of that count, but did not
constitute a cause of action.

There were special exceptions to the plaintiff's sixth and

eighth prayers, and as there was no evidence that the defendant "uttered other words of and concerning the plaintiff and imputing to her a want of chastity other than those charged," these exceptions should have been sustained and the prayers refused. The plaintiff's seventh prayer was identical with the one granted in *Fresh* v. *Cutter, supra,* and approved by this Court.

The defendant's first prayer denied a recovery under the first count; his second asserted that no recovery could be had under the second count; and his third maintained that there could be no recovery under the third count; and the fourth asserted that there was no evidence legally sufficient upon which she could recover. These prayers were all properly refused, first, because there was evidence of special damages; and secondly, because the words charged in the second count were actionable in themselves. The sixth prayer, which relates to the conversation testified to by Johnson, was properly refused, because the occasion on which that statement was made was not privileged. The seventh prayer, which was reference to the statement made to the State's Attorney of Dorchester County was correct in principle, and because of the defect in the plaintiff's second prayer, to which we have referred, it was reversible error to have rejected it. The eighth prayer was properly rejected for the reasons stated in passing upon the sixth prayer. There was no error in the rejection of the tenth prayer. This prayer was clearly wrong under the principles declared in *Schooley* v. *Gambrill,* 93 Md. 48, and in many other cases in this Court. The defendant's twelfth and thirteenth prayers should have been granted. They asked that the jury be instructed that the plaintiff could not recover under the first and second counts of the declaration if they found that the defendant did not speak the words set out in those counts. The sixteenth prayer, which asserted that there was no legally sufficient evidence to show that the plaintiff had suffered financial loss on account of the speaking of the words, was properly rejected, as the evidence given by the sisters of the plaintiff was sufficient to have caused the refusal of that prayer.

As the case may be retried upon an amended declaration, we have discussed the prayers upon the assumption that each count of the *narr.* sets out *per se* actionable slander, and the exceptions to the testimony will be treated upon the same assumption. It is unnecessary to discuss these exceptions in detail. Most of them may be disposed of by the application to the facts of simple and well established rules. We have examined the record carefully, and we find no error in the rulings in the first, third, seventh, fourth, fifth, sixth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth exceptions.

The second, eighth and ninth exceptions were taken under the following circumstances : The witness, S. Spry Andrews, was asked this question, which he was permitted to answer over the objection of the defendant: " What did you understand when the defendant said, ' she is a fast girl and not fit to teach school ? That it was an attack on her chastity ? ' " The answer was : " I understood it an attack upon her chastity." John Stanton, a witness for the plaintiff, after having testified that the defendant had spoken the words charged in the third count, was asked if he knew the meaning of the word " strapped " in that connection, in that neighborhood, when used in reference to a female. The defendant objected to this question, and the Court overruled the objection. The witness answered : " Yes, to have connection with a woman." He was then asked : Do you know the meaning of the word " strapped " in the neighborhood, and he answered that he did, and asked what its meaning was and how he understood it he replied " intercourse with a woman."

If there was a local or neighborhood meaning attached to the use of the words, the plaintiff had an undoubted right to prove it, and to prove in what sense the hearers understood the words. " When language is ambiguous, and it is doubtful in what sense the publisher intended it, the question is, in what sense the hearers understood it, for slander and damage consist in. the comprehension of the hearers." *Goldsborough* v. *Orem & Johnson*, 103 Md. 683 ; *Clute* v. *Clute, supra.* How

this local or unusual meaning is to be proved is thus stated by JUDGE ALVEY in *Newbold & Son* v. *Bradstreet*, 57 Md. 50. "The general rule doubtless is, that the ordinary popular meaning or sense of the language alleged to be libellous is to be taken to be the meaning of the publisher; but a foundation may be laid for showing another or different meaning. And so where the language is of doubtful meaning or import, or where it fails to convey any explicit meaning without the aid of extrinsic circumstances. In such cases, something may have previously passed, or some habit or usage may have obtained, that gave peculiar meaning or significance to the expressions employed. When, therefore, it is desired to get at this peculiar or extraordinary meaning of what is alleged to be libellous, the witness should be first asked whether there be any extraordinary or peculiar meaning expressed by the words in question ; and if the answer be in the affirmative, he should then state the means and extent of his knowledge upon the subject of the peculiar meaning of the words ; and if it appears to be adequate, he may then be asked the question, " what did you understand by the words employed ? " This seems to be the settled formula in such cases."

While it was proper for the plaintiff to show what she did prove by these witnesses neither had qualified himself to testify, under the rule stated. Andrews was not asked if there was any peculiar or extraordinary meaning expressed by the words in question, and besides the question to him was most suggestive ; and neither witness stated "the means and extent of his knowledge upon the subject."

3. The only remaining question arises upon the refusal of the Court to stay the proceedings until the costs in the former suit were paid. It has always been supposed by the profession in this State that that was a matter resting in the sound discretion of the trial Court, and that, as a general rule, the refusal to stay the proceedings is not the subject of an appeal. And this appears to be the rule in most jurisdictions. " The action of the Court upon an application to grant a temporary stay of proceedings is usually discretionary, and a' refusal of

the Court to grant such a motion, or an order to stay pro-
ceedings when addressed to its judicial discretion, will not be
reviewed, although if the discretion be abused, and the stay
is capriciously or unreasonably allowed, the action of the
Court may be controlled.  20 *Ency. Pl. & Pr.* 1278." In
the note to the case of *Shear* v. *Fox*, 11 L. R. A. 620, it is
stated that " proceedings in a second suit may be stayed until
the costs in a former suit for the same cause of action, which
had been dismissed, are paid.   The order granting the stay is
in the sound discretion of the Court, and should be granted
only where the second suit is vexatious and without merit,
which it will be deemed to be, unless the plaintiff shows to the
contrary."   This states the correct rule applicable to the sub-
ject, and is supported by the weight of authority in other
States.

Our conclusions are : 1.  That the demurrer of the first
count should have been sustained for the reasons stated ;
2.  That there was error in granting the plaintiff's second,
fourth, sixth and eighth prayers, and in refusing the defend-
ant's seventh, twelfth and thirteenth prayers ; 3.  That the
witnesses Andrews and Stanton were not qualified, under the
facts in evidence to testify to a peculiar meaning of the words
" fast " and " strapped."   For the errors committed by the
Court in these particulars the judgment must be reversed.

> *Judgment reversed, and new trial
> awarded, the appellee to pay the
> costs.*