## ZORA H. BRINSFIELD *vs.* NANNIE B. HOWETH.

*Motion to Stay Proceedings Until Costs on Appeal Be Paid—*
*Slander of Chastity of Female—Pleading—Evidence—*
*Juror Not Allowed to Impeach His Verdict.*

When a new trial of a cause has been ordered by the Court of
Appeals, a motion in the lower Court to stay the proceedings
until the costs on the appeal have been paid is addressed to
the sound discretion of the trial Court.

A declaration sets forth an actionable slander when it alleges
that the defendant said of the plaintiff, an unmarried female
school teacher: "She is a girl of loose character and not fit to
teach school," and that the defendant thereby meant that the
plaintiff was unchaste, and that the words were so understood
by the persons in whose hearing they were spoken.

A witness shown to be well acquainted in a certain neighbor-
hood, and who had frequently there heard certain words ap-
plied to females, is competent to testify as to the meaning
generally attached to such words in that neighborhood.

When the plaintiff alleges that she was unable to obtain again
a position as teacher in certain schools on account of defend-
ant's slanderous words concerning her, a witness may be
asked why plaintiff failed to get such position at the time in
question.

If the question asked a witness is proper, but the answer made
to it is not responsive or contains irrelevant matter, the cor-
rect practice is for the other side to move to strike out the
answer and to direct the jury not to consider it.

The defendant in an action of slander is not entitled to ask the
plaintiff who first informed her that he had used the alleged
defamatory words.

Upon the trial of a slander suit where the defendant was
charged with having spoken defamatory words concerning the
female plaintiff's chastity, the defendant had offered evidence

tending to prove that the plaintiff's general reputation for
chastity was bad. A witness produced in rebuttal was asked
to state whether or not he had heard plaintiff's general repu-
tation for chastity questioned or doubted before the institu-
tion of the suit. After he had answered in the negative, the
defendant objected to the question and the objection was over-
ruled. *Held,* that this ruling was correct—first, because the
objection was made too late; secondly, because the evidence
was admissible in rebuttal; and, thirdly, because the defend-
ant was not injured by the testimony.

Upon a motion for a new trial, it is not competent to offer the
affidavit of a juror to the effect that he was induced to agree
to the verdict as rendered in consequence of threats made
against him in the jury room, since a juror will not be al-.
lowed to impeach his verdict.

*Decided May 20th, 1905.*


Appeal from the Circuit Court for Wicomico County
(HOLLAND and JONES, JJ.).


*Plaintiff's 1st Prayer*—That inasmuch as the defendant
has not pleaded that the charges set out in the declaration and
offered in evidence are true, either in whole or part, he admits
that the plaintiff is not guilty of any of said charges, and the
jury must deal with the case upon that admission (*Granted.*)

*Plaintiff's 2nd Prayer*—If the jury shall find from the evi-
dence that the defendant, in the town of Cambridge, Mary-
land, in or about the month of April, 1905, in the presence
and hearing of William N. Andrews and S. Spry Andrews,
spoke of and concerning the plaintiff the words charged in the
second count of the declaration, and meaning and imputing
thereby a want of chastity in the plaintiff, and was so under-
stood by said hearers, and if they shall further find from the
evidence that the words spoken proceeded from express mal-
ice or ill-will to the plaintiff, then their verdict must be for
the plaintiff; and if they so find for the plaintiff they may
award such damages as they in their judgment shall think

justified by all of the facts and circumstances of the case, not only for the purpose of giving compensation for the injury done to the feelings and character of the plaintiff, but also for the purpose of adequately punishing the conduct of the defendant, and in assessing such damage they may consider the means and wealth of the defendant. (*Granted.*)

*Plaintiff's 4th Prayer*—If the jury shall find from evidence that the defendant, in or about the month of February, 1906, in the County of Dorchester, State of Maryland, in the presence and hearing of the witness, Benj. F. Johnson, spoke of and concerning the plaintiff the words charged in the third count of the declaration, then their verdict must be for the plaintiff, and if they so find for the plaintiff, they may award such damages as they in their judgment shall think justified by all the facts and circumstances of the case, not only for the purpose of giving compensation for the injury done to the feelings and character of the plaintiff, but also for the purpose of adequately punishing the conduct of the defendant, and in assessing such damages they may consider the means and wealth of the defendant. (*Granted.*)

*Plaintiff's 5th Prayer*—That the word "malice" as used in this form of action is not to be considered in the sense of spite or hatred against a person, but as meaning that the party is actuated by improper and indirect motives, other than the mere purpose of vindicating public justice. (*Granted.*)

*Defendant's 1st Prayer*—The jury are instructed that the burden of proof is upon the plaintiff to show by a preponderance of evidence that the defendant spoke of and concerning the plaintiff the words charged in the third count of her declaration, and unless the jury find by a preponderance of evidence that the defendant did speak of and concerning the plaintiff the words used in said count, their verdict must be for the defendant upon said count. (*Granted.*)

*Defendant's 2nd Prayer*—The jury are instructed that if they believe from the evidence that the defendant spoke of and concerning the plaintiff the words set out in the second count of the declaration, to wit: "She is a girl of loose char-

acter and not fit to teach school," and shall further find that the words were so spoken to William N. Andrews, State's Attorney of Dorchester County, in response to an inquiry made by the said William N. Andrews in his official capacity in the examination or investigation of a case then pending in the Circuit Court for Dorchester County, wherein the said plaintiff was charged with an assault, then their verdict must be for the defendant upon said count, unless they further find that the said words were spoken with express or actual malice on the part of the defendant, and the burden of proving such express or actual malice is upon the plaintiff. (*Granted.*)

*Defendant's 3rd Prayer*—The jury are instructed that before they can find for the plaintiff on the third count of her declaration in this case, they must find from the evidence that the words alleged therein to have been spoken by the defendant, if they find from the evidence that they were spoken by him, were spoken by him concerning the plaintiff, Nannie B. Howeth, and no one else; and the burden of proof that said words were so spoken by the defendant of and concerning the plaintiff is upon the plaintiff. (*Granted.*)

*Defendant's 5th Prayer*—That there is no legally suffient evidence to entitle plaintiff to recover under first count of her declaration. (*Granted.*)

*Defendant's 6th Prayer*—That there is no legally sufficient evidence to entitle plaintiff to recover under the fourth count of her declaration. (*Granted.*)

*Defendant's 7th Prayer*—If the jury find a verdict for the plaintiff; and if they further find that any of the words charged in the declaration which they may believe the defendant spoke of and concerning the plaintiff did not proceed from malice on the part of the defendant toward the plaintiff, in estimating damages the jury may take into consideration the circumstances under which said words were spoken, the reputation of the plaintiff for chastity at the time of the speaking of said words, and all the other facts and circumstances of the

case, and may in the exercise of their discretion award to the plaintiff nominal damages only. (*Granted.*)

*Defendant's 4th Prayer*—The jury are instructed that even though they find from the evidence that the defendant spoke of and concerning the plaintiff the words charged in the second count of the declaration, they cannot find for the plaintiff on said count, unless they further find that said words proceeded from express malice on the part of the defendant toward the plaintiff, and unless the jury so find, their verdict must be for the defendant on said second count. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Alonzo L. Miles* (with whom were *John R. Pattison* and *Toadvine* and *Bell* on the brief), for the appellant.

*F. H. Fletcher* (with whom were *Goldsborough, Ellegood, Freeny* and *Wailes* on the brief), for the appellee.

BURKE, J.; delivered the opinion of the Court.

This record brings up for review the propriety of ten rulings of the Circuit Court for Wicomico County. In the former appeal of the appellant herein, which is reported in 107 Md. 278, the legal principles to be applied to the case were stated, the judgment was reversed, and the case was remanded for a new trial, and it was adjudged that the plaintiff pay the costs. Upon the new trial a verdict and judgment were entered for the plaintiff for forty-five hundred dollars, and the defendant has again appealed.

This case, which is an action for slander, has been three times tried in the same Court. In the first trial the plaintiff submitted to a judgment of *non pros,* and in the subsequent trials she recovered judgments against the appellant. The Court, therefore, in which the case was tried was familiar with the facts, and with the financial condition of the parties,

and no doubt knew whether the plaintiff was financially able to pay the costs adjudged against her on the former appeal. It certainly was in a position to know whether, under the circumstances within its knowledge, it was proper to say that the trial should be stayed until those costs had been paid by the plaintiff. The refusal of the Court to grant this stay constitutes the appellant's first bill of exceptoin. The question presented by this exception was considered in the former appeal, and we there said that an application to grant a temporary stay of proceedings was addressed to the discretion of the Court, and that the refusal of the Court to grant it would not be reviewed, in the absence of an abuse of discretion by the lower Court. A motion to stay proceedings, based upon section 70, Article 75 of the Code 1904, is to be dealt with in precisely the same way. *Knee* v. *City Passenger Railway Company,* 87 Md. 623.

At the time the motion for a stay was made, it had been decided by this Court that the plaintiff had a good cause of action against the defendant. The lower Court was aware that the defendant was a man of substantial means, and that the plaintiff was comparatively poor, and the Court may have well thought that to require her to pay the costs would have imposed upon her a great hardship, and that such an order might have resulted in depriving her of the ability to try her case. We, therefore, think the Court acted clearly within its judicial discretion in refusing the motion, and that its action is not the subject of an appeal.

The declaration contains four counts. At the conclusion of the whole case the Court, at the instance of the defendant, instructed the jury that there could be no recovery upon the first and fourth counts, and, therefore, those counts will not be considered. At the time of the publication of the alleged slanderous words the plaintiff was and still is an unmarried female teacher in the public schools of Dorchester County. The words declared on in the second count are these: "She," the plaintiff, "is a girl of loose character and not fit to teach school." On the former appeal we decided that these words,

in the absence of a proper averment of extrinsic facts show-ing that the defendant meant to traduce the character of the plaintiff for chastity, were not actionable *per se*. But in the second count of the present narr. the plaintiff has introduced a prefatory inducement by which the defect found to exist in the former narr. has been cured. It is averred that he used the words "a girl of loose character" for the purpose of ex-pressing and meaning, and that the words were by the per-sons in whose hearing they were spoken understood to mean that the plaintiff was unchaste. Under the authorities cited in the former case, the count, as amended, sets forth *per se* an actionable slander. The words declared on in the third count reflect upon the plaintiff's chastity, and under sections 1 and 2, Article 88 of the Code are *per se* slanderous. *Cairnes* v. *Pelton*, 103 Md. 40.

The second exception was taken under the following cir-cumstances: S. Spry Andrews, a witness produced on behalf of the plaintiff, testified, among other things, that in Octo-ber, 1905, at Cambridge, he heard the defendant say to Wil-liam N. Andrews, the State's Attorney for Dorchester County, that the plaintiff was a girl of loose character and not fit to teach school. This witness lived about eighteen miles from Cambridge, and went to that place twenty to twenty-five times a year and was well acquainted with the people there. He was asked if he had ever heard "in this neighborhood, in your neighborhood, in Mr. Brinsfield's neighborhood and in Cambridge the word 'Loose character' as applied to a fe-male." He answered that he had heard it applied to females a good many times. He was further asked to state what was the peculiar meaning of the word used on this occasion in the neighborhood described by him. To this question the defend-ant objected, but the Court overruled the objection, and the witness said: "It means that a woman has not virtue." The exception to this evidence is based upon the ground that the witness was not qualified to speak as to the local, or unusual meaning of the words used in the neighborhood. It is true, so far as the record shows, that the counsel in eliciting this

evidence did not pursue the formal method stated in *New-bold & Son* v. *Bradstreet,* 57 Md. 50, but it does not there-fore follow that the testimony should have been excluded. He was well acquainted with the neighborhood in which the words were used, he had heard them applied to females a great many times, and his evidence shows in the neighbor-hood about which he was interrogated they had a slanderous meaning. He had stated the means and extent of his knowl-edge upon the subject of the peculiar meaning of the words with sufficient fullness to permit him to testify. In a subse-quent part of his testimony he was asked what he understood by the words used on the occasion of the conversation between Mr. Brinsfield and William N. Andrews, and he answered: "Same as before. I understood it to mean that Mr. Brins-field had said she was not virtuous."

The third exception was abandoned. The defendant in the former case offered to introduce the same character of evidence as that embraced in the fourth exception, and we held that it was properly excluded.

The plaintiff in the years 1904 and 1905 was teaching in Galestown School, in the neighborhood of her home. She was appointed by the school trustees as teacher in that school for the ensuing year, but her appointment was not confirmed by the School Commissioners. The schools at Toddsville and Hooper's Island which she secured were twenty-five and forty miles respectively from her home. The declaration alleged that she lost her situation at Galestown, and was also prevented from obtaining other desirable situations because of the alleg-ed slanders of the defendant. To prove these averments her sis-ter, Geneva Howeth, was asked if she knew why the plaintiff did not get any of the schools in her neighborhood in the year she taught in the Toddsville and Hooper Island schools. The defendant objected, and the ruling of the Court permitting the witness to answer constitutes the fifth exception. The question was a proper one, and asked for information upon a material point, and if her answer was not responsive, or con-tained irrelevant matter it was the duty of the defendant to

have moved to strike it out. But this was not done. It was said in *Brashears* v. *Orme,* 93 Md. 451, that "the proper practice is, when a question is asked that may call for an answer which is relevant and material, but the answer given is irrelevant and improper, to then ask the Court to strike out the question and answer, and if it be calculated to do him harm the Court should instruct the jury not to consider it." But aside from this, which is sufficient to sustain the ruling of the lower Court, the answer of the witness embraced substantially the same facts contained in the sixteenth bill of exception on the former appeal, which facts we held were proper to be considered by the jury.

There was no error in the sixth exception. The defendant sought to obtain from the plaintiff the name of the person who first told her that the defendant had charged her with being a girl of loose character. It was of no consequence who first gave her the information.

The witness, Jacob N. Wilson, called in rebuttal by the plaintiff, was asked this question: "State whether or not you have heard her general reputation for chastity questioned or doubted until the institution of this suit in 1905." To this question he answered: "No, sir." After the question had been propounded and answered the defendant objected; but the Court overruled the objection and permitted the answer to go to the jury, and this ruling is the subject of the seventh exception. There was no error in this ruling for at least three reasons—first, the objection came too late; secondly, it was proper evidence in rebuttal; and, thirdly, the testimony under the circumstances cannot fairly be said to have injured the defendant. In *Dent* v. *Hancock,* 5 Gill, 127, it is said that "it is the duty of counsel, if aware of the objection to its admissibility, to object to the testimony at the time it is offered to be given, or if unapprised of such objections at the time the evidence had gone to the jury, he must raise the objection within a reasonable time thereafter." The question propounded gave distinct notice to the defendant that it was proposed to introduce the very character of testimony of which

he here complains, and it was his duty *then* to object to the question and secure an exception in case of an adverse ruling by the Court. The rule stated in *Dent* v. *Hancock* has been approved and applied in many cases in this Court. *Baugher* v. *Duporn,* 9 Gill, 325; *Groshorn* v. *Thomas,* 20 Md. 242; *Marsh* v. *Hand,* 35 Md. 137; *Bell* v. *State,* 57 Md. 120. The defendant must be held to have waived all objections to this testimony. But the evidence was admissible in rebuttal. The defendant had offered evidence of witnesses tending to prove that the general reputation of the plaintiff for chastity in the community in which she lived was bad. A number of witnesses testified in rebuttal that her general reputation in that respect was good. Jacob N. Wilson, whose evidence is excepted to, was the last witness produced by the plaintiff. It is to be observed that he was not called to establish her general reputation for chastity. Had such been the object of the testimony, it would have been, under all the authorities, inadmissible in the form in which it was offered. It was offered, not to prove her general reputation for chastity, but to rebut the testimony by which that reputation was attempted to be discredited by the defendant's witnesses. There is a clear distinction between the two classes of evidence and the principle controlling its production. This distinction is stated in *Sloan* v. *Edwards,* 61 Md. 90, and in that case the principle upon which evidence of the character given by Wilson is held to be admissible was discussed and approved. But in view of the great amount of testimony *pro* and *con* offered in the case upon the question of the plaintiff's general reputation for chastity it is hardly probable that the evidence of Wilson affected the jury to any appreciable extent.

This brings us to the eighth exception, which relates to the ruling on the prayers. The Court granted four prayers on behalf of the plaintiff and six on the part of the defendant. It refused the defendant's fourth prayer. As the amended declaration states a case of actionable slander *per se,* the action of the Court upon the prayers, which the Reporter will set out in the report of the case, need not be discussed. It will be-

seen upon examination of those prayers that the Court correctly applied the rules of law stated in the former case. The defendant's fourth prayer was bad in that it did not require the jury to find the facts which in law would amount to a qualified privilege. That question, however, was correctly submitted by the plaintiff's second prayer, which contains a statement of all the facts essential to a recovery on the second count.

The ninth and tenth exceptions may be considered together. The defendant filed a motion for a new trial. In support of this motion he offered an affidavit of John W. Jones, one of the jurors who tried the case, to the effect that after the jury had retired to the jury room to consider the case he was in favor of a verdict for the defendant, and that he held out for several hours for that finding; that several of the jurors became very angry and swore at him; that there were violent oaths used, and that certain of the jurors intimated that he had been bought; that they told him that he would be a ruined man around the Courthouse if he did not agree to a verdict for the plaintiff; that they said that Brinsfield had bought the witnesses; that but for these threats and representations made to him he would never have agreed to a verdict for the plaintiff, and that in his judgment the verdict was not warranted by the evidence. The Court refused to receive this affidavit in evidence at the hearing of the motion, and this refusal constitutes the ninth exception. The tenth exception is to the denial of the motion for a new trial. It must be admitted that the tenth exception must fail if the Court was right in rejecting the affidavit, as the general rule is that no appeal will lie from the refusal of the Court to grant a new trial. The rule, which obtains in nearly all the States, is that a juror will not be permitted to impeach his verdict. It prevails both in England and in the Federal Courts. The reason for the rule is thus stated in 14 *Ency. Pleading and Practice,* 906: "Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room and afford an opportunity for fraud and perjury. It

would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony and has considered it unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the Court, to be subverted by going behind it and inquiring into the secrets of the jury room." This is also the Maryland rule (*Bosley* v. *Chesapeake Insurance Company,* 3 G. & J. 473, and *Browne* v. *Browne,* 22 Md. 104), and we are not aware of a single instance in this State in which it has not been followed. Such affidavits, if admitted, are entitled to very little consideration, and would not be sufficient in themselves to disturb the verdict. Finding no error in any of the rulings of the lower Court, the judgment will be affirmed.

> *Judgment affirmed, with costs above and below.*