520 A.2d 1330

Stephen SHAPIRO, et al.,

v.

Barry Norman CHAPMAN.

No. 770, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Feb. 11, 1987.

308

Natalie D. McCeney, Baltimore (Jonathan Shapiro of Alexandria, Va., on the brief, for appellants.

No brief or appearance by appellee's counsel.

Argued before BLOOM, KARWACKI and POLLITT, JJ.

BLOOM, Judge.

Stephen Shapiro, Norman Wotring, and John Dignan appeal from judgments of the Circuit Court for Baltimore County, which awarded each of them $1.00 compensatory and $1.00 punitive damages in their suit against appellee, Barry Norman Chapman.

## Facts

Appellants are all profoundly retarded adults who are involuntarily committed to the Rosewood Center, a state operated facility for the care of the mentally ill. Two of them are also blind. During the period of time relevant to this action, all of the applicants were in the care of appellee, a direct care aide at Rosewood Center. Appellee's responsibilities included escorting residents of the facility to medical appointments and supervising them during meals.

In December 1982, Richard Rowland, a newly assigned direct care aide reported to the administrative director of Rosewood that he had witnessed several violent incidents involving appellants and Chapman. Rowland stated that he had seen Chapman strike, kick, drag and otherwise assault

appellants on more than one occasion. The director conducted an investigation and, pursuant to Md.Health-Gen. Code Ann. section 7–602(m)(2)(iii)(2), reported the matter to the Maryland Advocacy Unit for the Developmentally Disabled (MAUDD), a private non-profit corporation designated by Executive Order as the state agency for the protection and advocacy of the rights of developmentally disabled persons. COMAR 01.01.1977.07.

MAUDD, through appellants' guardians *ad litem*, filed an action on behalf of appellants, seeking redress for Chapman's abusive conduct. The complaint asserted three causes of action for each complainant, based on alternative theories of recovery: (1) Chapman's conduct deprived appellants of their Fourteenth Amendment due process right to be free from physical abuse, made actionable through 42 U.S.C. § 1983; (2) Chapman violated rights guaranteed appellants under Md.Health-Gen.Code Ann., section 7–601;[1] and (3) common law assault and battery. The court below granted Chapman's motion for judgment as to the first two counts. It was the court's reasoning that because appellants could obtain relief for Chapman's abuse through an action for common law assault, they had not been deprived of any constitutional right, thus an action under § 1983 did not lie. With respect to the count premised upon Md. Health-Gen.Code section 7–601, the court ruled that no separate cause of action existed for a violation of that statute.

The jury returned a verdict in favor of appellants on the surviving count and awarded each appellant $1.00 in compensatory damages and $1.00 in punitive damages. Appellants filed a motion for new trial, with respect to the meager damage awards. The court denied the motion and entered judgments in accordance with the verdicts; this appeal ensued.

---

**1.** All references to the Health-General Article of the Code are to Code sections as they existed in 1982, when the causes of action accrued. The relevant sections have since been amended and renumbered.

## I *42 U.S.C. § 1983*

Appellants contend that the court erred in refusing to permit their first count, which alleged a violation of 42 U.S.C. § 1983, to go to the jury.[2] To prevail under § 1983, a plaintiff must establish (1) that the defendant deprived him of a right secured by the constitution or laws of the United States and (2) that the deprivation was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). There can be no dispute as to the second element; Chapman, as an employee of the state charged with the duty of providing for appellants' care and safety, was a state actor with respect to the alleged incidents of abuse. *Cf. Spence v. Staras*, 507 F.2d 554 (7th Cir.1974); *Patricia B. v. Jones*, 454 F.Supp. 18 (W.D.Pa.1978). The focus of our inquiry, therefore, is whether appellants were deprived of a constitutionally secured right.

The court below found that no constitutional violation had occurred because appellants were able to seek redress for their injuries in a common law action for assault and battery. Although the availability of another remedy is highly relevant where the claimed deprivation is of procedural due process, *see Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the availability of post-deprivation state law remedies is irrelevant in cases involving denial of substantive due process. *Cf. Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring). The violation of a substantive constitutionally guaranteed right exists independently of the procedures available to redress that wrong. *See Perry v. Sindermann*, 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). It is, therefore, illogical to condition the finding of a substantive violation of a constitutional right on the non-existence of procedural remedies.

---

2. Appellants do not raise on appeal the court's failure to grant injunctive relief as requested by them in the § 1983 action.

*See Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir. 1983); *Brewer v. Blackwell,* 692 F.2d 387, 395 (5th Cir. 1982); *Spell v. McDaniel,* 591 F.Supp. 1090, 1105 (E.D.N.C. 1984); *Begg v. Moffitt,* 555 F.Supp. 1344, 1362 (N.D.Ill. 1983). Because appellants asserted a violation of their substantive due process rights to be free from physical abuse at the hands of one acting under color of state authority, the court erred in holding that the availability of an action for assault and battery negated any violation of appellants'₍ constitutional rights.

Our holding that the court below erred in granting judgment in Chapman's favor on the § 1983 action does not end our inquiry. We must also determine whether the lower court's error was harmless. In the context of this appeal, harmlessness may be found if (1) the evidence demonstrated no violation of substantive due process or (2) even if such a violation was shown, appellants would have been entitled to no greater relief than that which they received from the jury under the count of assault and battery. Upon review of the record, we conclude that the error was not harmless in either respect.

■ The Supreme Court has made it clear that an involuntarily committed resident of a state mental facility has a substantive liberty interest in his own personal safety. *Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 2457, 73 L.Ed.2d 28 (1982). This does not imply, however, that every act which impinges upon that liberty works a constitutional deprivation. Not every tort committed by a state employee is a violation of the constitution. *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980); *Spell v. McDaniel, supra,* 591 F.Supp. at 1100. *Cf. Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) ("not every injury in which a state official played some part is actionable under [section 1983]"); *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2696, 61 L.Ed.2d 433 (1979) ("false imprisonment does not become a violation of the Fourteenth Amendment merely because the defend-

ant is a state official"); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). The critical question before us is whether Chapman's conduct was so egregious that the torts he committed rise to the level of a constitutional violation. *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). In our search for the answer to that question we find instructive the words of Chief Judge Friendly, uttered in a slightly different context—a § 1983 action against a prison guard for an unprovoked attack on a prisoner:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Application of those factors to the facts before us does not require this Court to mull through the details of each incident of Chapman's misconduct. In order to award punitive damages, the jury necessarily found that Chapman's actions were excessive, wanton and malicious. *See Wedeman v. City Chevrolet Co.*, 278 Md. 524, 530–33, 366 A.2d 7 (1976). As a matter of law, therefore, the acts complained of—wanton, malicious and excessive use of force against patients involuntarily committed to a state institution by one employed by the state to care for those patients—rise to the level of constitutional torts for which recovery may be had under U.S.C. Title 42, § 1983.

■ Nevertheless, but for the existence of 42 U.S.C. § 1988, which provides for the awarding of attorneys' fees to the prevailing party in a civil rights action, we would be constrained to hold that the court's error in granting judg-

ment on the first count was harmless. Courts traditionally have fashioned remedies for violations of § 1983 by employing the principles of relief associated with analogous common law torts. *E.g., Clappier v. Flynn,* 605 F.2d 519, 528 (10th Cir.1979). *See Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). We see no significant difference between the interests protected by the substantive due process right to be free from physical abuse and the interests protectable by an action for the common law tort of assault and battery. The elements of damages recoverable in an action under § 1983 are identical to those recoverable in a common law action for assault and battery. Appellants would have been entitled to no greater measure of damages as a result of the violation of § 1983 than that afforded them by the jury under the third count in their complaint. They would not have been permitted to recover twice for the same tort merely because the wrong gave rise to alternative theories of recovery. *Cf. Kramer v. Emche,* 64 Md.App. 27, 38, 494 A.2d 225, *cert. denied,* 304 Md. 297, 498 A.2d 1184 (1985) (expressing the "one wrong—one recovery" rule).[3]

There is, however, one substantial difference between recovery in a § 1983 action and recovery in a common law tort action. As the prevailing parties to a civil rights action,[4] appellants would be entitled, under § 1988, to

---

**3.** In that respect the common law count and the § 1983 count amount to no more than alternative theories for seeking the same relief in a fashion similar to pleading breach of contract, negligence and strict liability as alternative grounds for relief in a products liability action. *Clappier v. Flynn, supra,* 605 F.2d at 529.

**4.** In the event that a § 1983 claim goes unresolved, the plaintiff may still be entitled to attorneys' fees if the constitutional claim was substantial and grew out of the same facts as the claim that was resolved. *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Maher v. Gagne,* 448 U.S. 122, 130–31, 132 n. 15, 100 S.Ct. 2570, 2575–76, 2576 n. 15, 65 L.Ed.2d 653 (1980). The Court of Appeals, consequently, has directed that when civil rights actions are relatively easily resolved in light of United States Supreme Court or Maryland Court of Appeals decisions, lower courts should consider

attorneys' fees associated not only with their trial but also their appeal. *Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir.1978). This is true even though appellants were represented by a publicly funded, non-profit law office. *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148–49 (2d Cir.1983); *Perez v. Rodriguez Bou,* 575 F.2d 21, 24 (1st Cir.1978). Since an award of attorneys' fees is not permitted in an action for assault and battery, the court's rejection of appellants' § 1983 count caused appellants legally cognizable harm. Accordingly, we will vacate the circuit court's judgment while affirming the jury's verdict, and we will remand the case to the circuit court with instructions to enter judgments in favor of each appellant on the first as well as the third count in the amounts of $1.00 compensatory damages and $1.00 punitive damages and to award appellants attorneys' fees in such amounts as the court may deem appropriate for all proceedings of this case, at both the trial and appellate levels, pursuant to U.S.C. Title 42, § 1988. We suggest that in determining the amount of attorneys' fees, the court should be guided by the excellent discussion contained in *Rahmey v. Blum,* 95 A.D.2d 294, 300–06, 466 N.Y.S.2d 350, 356–60 (1983).

## II *Health-General Article § 7–601*[5]

Appellants maintained below that § 7–601 of the Health-General Article establishes certain rights, the violation of which is actionable.[6] The court flatly rejected this conten-

---

the constitutional claim even though the case may otherwise be resolved on state law grounds. *County Exec., Prince George's County v. Doe,* 300 Md. 445, 460 n. 13, 479 A.2d 352 (1984).

**5.** As noted, *supra,* note 1, § 7–601 has been amended and renumbered as section 7–1002.

**6.** § 7–601 reads:

*Policy.*—It is the policy of this State that, in addition to any other rights, each mentally retarded individual who receives any service in a facility has the following basic rights:

⸴ (1) The right to be treated with courtesy, respect, and full recognition of human dignity and individuality;

tion, finding that a violation of § 7–601 could be evidence of the commission of a tort, but could not serve as a basis for seeking relief in and of itself. Naturally, appellants assert that the court erred.

■■■ It has been stated that a traditional common law cause of action will lie when a statute establishes an individual right or imposes a corresponding duty on government but fails to provide an express remedy, *Widgeon v. Eastern Shore Hosp. Ctr.*, 300 Md. 520, 536, 479 A.2d 921 (1984). We need not determine, however, that the court below properly applied this principle in granting appellee's motion as to the second count on the theory that assault and battery was the appropriate common law remedy for violations of § 7–601.[7] Even if the court erred, for the reasons discussed more fully in part I of this opinion we hold that such error was harmless. A violation of that statutory provision is no more than an alternative theory of recovery for the same injuries arising from the same acts for which the jury awarded compensation under the count for assault and battery.

Appellants theorize that had the jury known of Chapman's violation of his statutorily mandated duty of care it might well have awarded greater punitive damages, thus the court's alleged error was harmful. We reject that argument. The jury was fully aware that Chapman was a

---

(2) The right to receive treatment and services in the least restrictive environment that is available, adequate, appropriate, and in compliance with relevant laws, rules, and regulations;

(3) The right to be free from mental and physical abuse;

(4) The right to be free from physical and chemical restraints, except for minimal restraints that a physician authorizes, in writing, for a clearly indicated medical need and makes a permanent part of the individual's record; and

(5) The right to receive respect and privacy in an individually developed program. Md.Health-Gen.Code Ann. § 7–601(a) (1982 Repl.Vol.) (amended and recodified as § 7–1002(b)).

7. Accordingly, we need not speculate as to whether every incident occurring in a mental care facility which might be properly labeled as discourteous or disrespectful would be actionable as a violation of § 7–601.

direct care aide at Rosewood; it is ridiculous to speculate that it was not equally aware that a person hired to care for the mentally retarded has a duty to refrain from physically attacking them. Moreover, if appellants had wished to emphasize that legal duty as it pertained to the assessment of damages, it would have been appropriate for them to request an instruction on that matter. Appellants make no contention that the court erred in its instruction to the jury.

### III *Denial of Motion for New Trial*

It is so well settled that a trial court's disposition of a motion for new trial will not be disturbed but for abuse of discretion that the point requires no citation here. Appellants argue that there was an abuse of discretion in this case because, they contend, the damage award was absolutely inconsistent with the evidence and thus had to have been based upon prejudice or other improper considerations. We find no merit in these contentions.

The evidence pertaining to damages that was presented by appellants consisted of the testimony of Richard Rowland, the witness to the incidents which form the basis of the action, and the testimony of Dr. James Tolan, an expert witness who described the effect that violent behavior tends to have on the profoundly retarded. Appellants point out that their testimony on damages was uncontradicted. That observation, however, misses the mark. The trier of fact is not bound to accept the testimony of any witness even if it is uncontradicted. *Roeder v. Auxier*, 70 Md.App. 50, 519 A.2d 1323 (1987). The jury found that Chapman willfully and maliciously assaulted appellants, but it apparently did not believe that appellants sustained any significant injuries. These findings were certainly within the jury's prerogative.

Appellants make the emotional argument that if a mentally normal individual were struck, kicked, dragged and otherwise abused, a jury would surely return a verdict in excess of $2.00 and thus the jury award was the improper product of prejudice against the mentally handicapped. There is, of

course, nothing in the record to support such a contention. Indeed, the plight of the unfortunate, helpless victims of appellee's malicious conduct would normally excite sympathy for them rather than prejudice against them. Refusal to set aside the jury verdict and order a new trial on the basis of such speculation was not an abuse of discretion.

■ Next, appellants contend that the jury's decision to award nominal damages was based on an improper consideration of who would benefit from a large award. Some members of the jury, who spoke with appellants' counsel, indicated that during deliberations jurors expressed the view that a large damage award would inure only to the benefit of the state or appellants' guardians rather than appellants. Appellants argue that the court below, presented with this revelation, was required to grant their motion for new trial. We disagree.

It is well settled in Maryland that a juror may not impeach his verdict, whether the jury conduct objected to is misbehavior or mistake. *Wernsing v. General Motors Corp.*, 298 Md. 406, 411, 470 A.2d 802 (1984). The reasons for this rule were stated by the Court of Appeals in *Brinsfield v. Howeth*, 110 Md. 520, 73 A. 289 (1909):

> Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room and afford an opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony and has considered it unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the Court, to be subverted by going behind it and inquiring into the secrets of the jury room.

*Id.* at 530–31, 73 A. 289 (quoting 14 Ency.Pleading & Practice, at 906). It also has been observed that permitting a juror to impeach his verdict will lead to harassment of

jurors by disgruntled parties and erosion of the public confidence in the judicial process. *Williams v. State,* 204 Md. 55, 69, 102 A.2d 714 (1954). It is for these reasons that comments by some jurors concerning the deliberative process by which the verdict was reached cannot serve as a basis for granting a new trial.

Appellants' final arguments concerning abuse of discretion center around certain comments made to the jury during closing arguments and the court's instructions to the jury. Appellants raised no objections to the remarks below; accordingly they are not properly before us. Md.Rule 1085.

VERDICTS AFFIRMED.

JUDGMENTS VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.