181 N.J. Super. 463 (1981)
438 A.2d 344
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICKEY DALE YOUNG AND TERRY DEAN POSTON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1981.
Decided October 27, 1981.
*465 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Roy B. Greenman, designated counsel, argued the cause for appellant Mickey Dale Young (Stanley C. Van Ness, Public Defender).
Philip Ross, designated counsel, argued the cause for appellant Terry Dean Poston (Stanley C. Van Ness, Public Defender; Philip Ross of counsel and on the brief).
Debra L. Stone, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General of New Jersey, attorney for respondent; John J. Degnan, former Attorney General of New Jersey).
The opinion of the court was delivered by PETRELLA, J.A.D.
Defendants were convicted by a jury of all but three counts of a 15-count indictment for offenses arising out of two armed robberies at a Holiday Inn in Wildwood Crest on October 29, 1977. They were convicted of breaking and entering two separate rooms, armed robbery, robbery, atrocious assault and battery *466 while armed, assault with a dangerous weapon and threatening to take a life. The jury acquitted them on charges of assault with intent to kill; assault with intent to kill while armed, and possession of a knife. They were sentenced to an aggregate of 20 to 25 years in State Prison. Defendants now appeal on various grounds.

I
One of the grounds of appeal is the denial by the trial judge of a request to call one of the jurors, a Mrs. H., for interrogation pursuant to R. 1:16-1. This occurred after a defense attorney reported receiving a telephone call from a male identifying himself as a juror. Two separate motions were made by defendants which sought this relief. Both were denied.
The first motion was brought based on a affidavit of Edgar R. Holmes, trial attorney for defendant Poston, who stated he received an anonymous telephone call on the date the verdict was rendered, October 25, 1979, from a man who identified himself only as having been a juror in the case. This was shortly after the jury returned its verdict. The call was reportedly to the effect that he and two other jurors only "went along with the guilty vote because he felt that an appeal would be better than a hung jury." The basis for this feeling was his erroneous belief that the defendants could be released on bail pending appeal and could not be so released with a hung jury.
At the trial judge's direction Holmes testified under oath, over his own objection, regarding statements he made in his affidavit. Holmes said this unidentified person would not give his name and feared calling the court because he might be held in contempt. He suggested that this juror call a third party and the attorney agreed when a newspaper reporter was discussed.
The caller started to discuss the verdict and Holmes did not interrupt. The caller said he hoped the conviction would be appealed because in his opinion the defendants got a "bum deal" because there were ignorant people on the jury who just wanted to hang them. He felt the other jurors pressured him and two *467 other hold-outs because they wanted to get back to work for fear of losing their jobs.
Holmes also stated that on October 30, 1979 he was riding his bicycle when approached by a man who identified himself as the husband of Mrs. H., a juror. The juror's husband allegedly told him that his wife was unable to eat and sleep and was "forced" to vote guilty. Holmes said he told him to have his wife call the court but the man said that his wife was at that very moment attempting to call the newspapers. Holmes testified he then rode his bicycle to the courthouse to report this encounter to the trial judge. By coincidence, at the courthouse he saw the newspaper reporter and decided to ask him if a woman was trying to call him.
Defendants argued for the recall for interrogation of just Mrs. H. as the only juror who was known to them and because she had allegedly "gratuitously called the Atlantic City Press," and also had made public statements about pressure allegedly placed on her by other jurors. Defendants did not ask for recall of all of the jurors because of the language severely limiting such actions which was contained in State v. Athorn, 46 N.J. 247, 250 (1966), cert. den. 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966). Defense counsel sought to have her questioned to determine whether there was any misconduct that would warrant interrogation of all the jurors.
In a comprehensive oral opinion in which he quoted extensively from State v. Athorn, supra, and State v. La Fera, 42 N.J. 97 (1964), the trial judge denied that application.
Subsequently, defendants filed the second motion, which was a new trial motion. The failure to call in Mrs. H. for interrogation was argued as one of the grounds for a new trial.
Prior to argument of the motion on December 3, 1979, the judge became aware that Mrs. H. had received one or more "threatening" phone calls following a series of newspaper articles relative to the trial and the jury deliberations. Because the judge expected shortly to enter the hospital for an undetermined length of time, he requested that a detective from the *468 Lower Township Police Department interview Mrs. H. Defense counsel was provided with a copy of the report on the hearing date and objected to referring to it. We have been provided with neither the detective's report nor copies of the newspaper articles. In any event, the transcript of the motion provides sufficient basis for our review.
This detective ascertained that male callers had called Mrs. H. on several occasions. He learned that Mrs. H.'s husband had bumped into Holmes at the Jamesway Department Store and that it was Holmes who said, "Do me a favor, and tell your wife to call the press." She did not place the call to a newspaper reporter, according to the report. Rather, the reporter telephoned her and said, "I understand you have a statement to make." She then made statements which appeared in the press and which she apparently later regretted having made. The trial judge correctly indicated that it is totally inappropriate for any attorney, directly or indirectly, to suggest to any juror or participant in a trial that he go to the press to relate his story. He implied that it was defense counsel who suggested that the press be contacted. The motion was denied.
The judge found that good cause, as defined in the case law, had not been shown; there were no "extraneous influences" outside the jury room which tainted the verdict, and that no pressure existed beyond that which may normally be anticipated during the course of deliberation, particularly after a seven week trial. See State v. Athorn, supra, 46 N.J. at 253. He denied the motion.
R. 1:16-1 expressly deals with and limits the interviewing of jurors subsequent to trial. That rule provides:
Except by leave of court granted upon good cause shown, no attorney or party shall himself or through any investigator or other person acting for him interview, examine or question any grand or petit juror with respect to any matter relating to the case.
The strong policy reasons which shield the deliberative process of juries have been fully discussed in our cases. The late Chief Justice Weintraub emphasized the importance of preserving the secrecy of jury deliberations:

*469 A jury deliberates in secrecy to encourage each juror to state his thoughts, good and bad, so that they may be talked out. `Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world'....
For the juror's individual protection, the law raises a privilege against disclosure of his communications during deliberations, a privilege which will yield only to some greater public need. 8 Wigmore, Evidence, (McNaughton rev. 1961) § 2346, P. 678; Clark v. United States, supra (289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993).
It is true that no settled rule bars extrajudicial, post-trial disclosures by a juror of his own views even though in cases of public interest the trial judge not infrequently cautions against such disclosures. Yet one of twelve may not be able to disclose his own part without revealing something the other jurors are entitled to have protected. Moreover the public too has a stake in the promise of secrecy to insure free debate in cases to come. In these circumstances it is appropriate to protect all the jurors against efforts of others to browse among their thoughts in search of something to invalidate their verdict. This R.R. 1:25A [the predecessor to R. 1:16-1] seeks to do. [State v. La Fera, supra, 42 N.J. at 106]
We recognize that there is a claim here that jurors were subjected to certain pressures in the jury room. Chief Justice Weintraub in La Fera, also recognized that during the course of deliberations even strong convictions may "yield ... to persuasion in the jury room." Id. 42 N.J. at 109.
R. 1:16-1 contains the express requirement that a trial judge must be satisfied there is good cause for permitting interrogation of the jurors before such an inquiry may be permitted. More than a mere possibility of a tainted verdict must exist to satisfy the good cause requirement. State v. La Rocca, 81 N.J. Super. 40, 44-45 (App.Div. 1963).
Our cases have held that even a juror's misunderstanding of the trial judge's instructions will not suffice to nullify a jury's determination. State v. Athorn, supra, 46 N.J. at 253. In Athorn allegations by a juror that he was tricked into voting guilty and that one of the women jurors called him stubborn and looked at him as if "they were looking to get home or something," were held to be clearly frivolous and did not warrant further interrogation of the jurors. Ibid. As Justice Proctor stated when reversing the trial judge's order for interrogation:

*470 Molee's allegations that he was "tricked" by another juror into voting guilty, that one of the women jurors called him "stubborn," that other women jurors looked at him as if "they were looking to get home or something," and that he was bothered by the trial judge's side bar conferences with defense counsel are clearly frivolous and certainly do not warrant any further interrogation of the jurors. A court should not investigate the thought processes which induced a particular juror to join in a verdict. Moreover, there is nothing in Molee's testimony indicating that he voted for a guilty verdict because his will was overborne by the improper actions of other jurors. It is to be expected that in the interplay of personalities attending a jury's deliberations there will be occasions when some jurors will give vent to feelings of exasperation or frustration. The expression of these feelings should not be the basis upon which a juror may impugn the verdict, particularly a juror who, like Molee, assented to the jury's decision when polled in open court. See People v. Van Camp, supra [356 Mich. 593, 97 N.W.2d 726]; Brinsfield v. Howeth, 110 Md. 520, 73 A. 289 (Ct.App. 1909). [State v. Athorn, supra, 46 N.J. at 253]
Obviously, even a reference by an undisclosed juror, if it was a juror, in a telephone call, as to his understanding of or misunderstanding of bail has nothing to do with a fact not in evidence. It relates to a question of law and a mistaken legal opinion.
In Menza v. Diamond Jim's Inc., 145 N.J. Super. 40, 44-45 (App.Div. 1976) it was stated that affidavits of jurors will not be received for the purpose of impugning or destroying the verdict. The affidavit tendered in that case was held inadmissible. In this case there is not even an affidavit of a juror that had been submitted, but rather an affidavit of an attorney regarding what one unidentified person who claimed to be a juror stated, and regarding another juror who may have felt pressured. Clearly the proffered allegations did not rise to a level which would require the trial judge to hold an interrogation of the juror involved, and certainly not of the entire jury. In this respect, his determination at the initial motion was clearly correct although we must emphasize that it is the judge himself who must inquire when a juror expresses a problem related to trial conduct, deliberations or the verdict.
Furthermore, Evid.R. 41 provides that upon an inquiry into the validity of a verdict there are limitations on the admissibility of evidence. The rule reads:
Upon an inquiry as to validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition *471 upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined.
As the annotation to the Evidence Rule states:
........
What Rule 41 does prohibit, is the admission, at an inquiry challenging a verdict or indictment, of evidence showing the effect of various events upon the mental processes of jurors. It has been said that the basis for the Rule is that the working of the mind of any one of the jurors cannot be subjected to the test of other testimony, and therefore testimony about a juror's mental processes should not be received to overthrow the verdict to which all the jurors assented. [Evid.R. 41 (Anno. 1980), 190].
Obviously, there must be substantial grounds to justify overturning a verdict. Only when there is proof of juror bias or the injection by a juror in the deliberations of personal knowledge of material facts not in evidence will reversal be required. See State v. Athorn, supra, 46 N.J. at 252. Case authority and Evid. R. 41 prohibit inquiry into the mental processes of jurors on their ordinary deliberations. Here there is absolutely nothing that was presented, either in the affidavit or testimony of the defense attorney or in the detective's report, which would have warranted calling in that juror or any other juror.
We cannot emphasize too strongly the impropriety of any attorney advising a juror to contact a newspaper reporter to discuss jury deliberation. Like the situation in State v. Le Fera, supra, 42 N.J. at 106, this offends the spirit of R. 1:16-1. Cf. DR. 7-107(E). This is especially so when it involves a matter potentially the subject of an appeal. An attorney, as an officer of the court, knows or should know that the Rules of Court and the disciplinary rules set forth his obligations. He should promptly advise any juror who approaches him that he may not discuss the matter and that he must promptly report any such communication to the trial judge. See DR. 7-108(E). Furthermore, he should encourage the juror to go directly to the judge to make any complaint or advise the judge what may have transpired if there appears to be any questions in the juror's mind.
*472 Nor do we approve the use of a police officer to question any juror about a matter pertaining to the trial. Of course, any threat of violence or similar police matters would be in a different category. But if a juror is to be questioned about any matter which pertains to the verdict, that is a judicial function and is the responsibility of a judge which cannot be delegated outside the judicial system.

II
Another ground of appeal is based on a claim of plain error in that the trial judge gave an Allen[1] charge which the New Jersey Supreme Court recently determined in State v. Czachor, 82 N.J. 392, 407 (1980), should be replaced in favor of the A.B.A. Model Charge in criminal cases. Notwithstanding the prior approval of the United States Supreme Court and the New Jersey Supreme Court, see State v. Williams, 39 N.J. 471 (1963), cert. den. 374 U.S. 855, 83 S.Ct. 1924, 10 L.Ed.2d 1075 (1963), the Czachor court determined that subtle psychological pressure which might be imposed on dissenting jurors warranted a change.
However, our Supreme Court adopted a rule of limited retroactivity for cases, such as the one involved on this appeal, which were tried prior to the 1980 Czachor decision. The rule is:
... There will undoubtedly be some appeals coming within the rule of limited retroactivity in which all or the most objectionable characteristics of the typical Allen charge will not be present. In such instances, it would be appropriate for the appellate court to review the surrounding circumstances in order to decide whether there was sufficient potential for coercion to justify reversal. In other situations, like the present case, where a coercive Allen charge had been given three times to a deadlocked jury in a brief and relatively simple criminal trial, a reversal and retrial will ordinarily be required without a further showing of actual prejudice. [82 N.J. at 410]
We have reviewed the surrounding circumstances of this seven week jury trial with a contested issue of identification of *473 the defendants by the three victims. The jury deliberations took about 12 hours over a three-day period, and the jury did not reach a verdict until about a day and a half after the Allen charge was given. There was no repeated giving of the charge over a short period of time. Under all the circumstances we conclude that there was not sufficient potential for coercion to justify reversal.
Defendants also claim that reference to prior criminal activity was so prejudicial as to deny them a fair trial. During the course of the trial certain prosecution witnesses (all of whom had been sequestered) made reference to a "stolen" credit card in the name of a Rev. Conrad Brown which defendants used to pay for such items as food and lodging. It was obvious from all the testimony that defendants were not the rightful holders of that credit card whether or not the card had inadvertently been characterized as stolen.
There were other references to defendants' possession of a stolen car while staying with a Catherine Katkowski in Allentown, Pennsylvania, and to Young having admitted being responsible for a stolen van in California. Obviously, such evidence is inadmissible as proof that a defendant has a disposition to commit a crime or as the basis for an inference that he committed the crime charged. See Evid. R. 55.
These statements were essentially volunteered by the witnesses. In context they were not made to establish a disposition to commit crime, but were being used by a witness solely to describe personal property. The court gave curative instructions which we are satisfied were adequate under the circumstances. See State v. Sempsey, 141 N.J. Super. 317 (App.Div. 1976), certif. den. 74 N.J. 272 (1977). From our review of the record we are satisfied that under the circumstances of this case such testimony was not deliberately elicited. It was not evidence sought to be introduced by the State as to disposition to commit crime. Even if there was error as to such statements, we are satisfied that in the context of the trial as a whole, including the judge's limiting instructions, such error was harmless *474 beyond a reasonable doubt. It was clearly not capable of producing an unjust result. State v. Macon, 57 N.J. 325, 337-338 (1971); R. 2:10-2.
The following additional issues were also raised by defendants on this appeal:
1) The court erred in permitting the three witnesses who misidentified Dick Kern at the Wade hearing to subsequently make an in-court identification in front of the jury without conducting a hearing out of the presence of the jury to determine the circumstances which changed their ability to make an in-court identification;
2) The trial judge erred in permitting the prosecutor to introduce voice identification at the trial without the necessary safeguards to insure due process of law;
3) The court erred in permitting the State to introduce evidence based on materials which it had in hand or to which it uniquely had access prior to the time of trial and which was not furnished to defense counsel;
4) The court erred in permitting the knife into evidence by reason of failure to establish the chain of custody;
5) The trial court erred in admitting gasoline purchase receipts from Atlantic City into evidence, and
6) The trial court erred in refusing to permit evidence of prior criminal convictions of Dolphus Dulin (who was neither a defendant nor a witness).
We have considered the remaining issues in the light of the contentions in the briefs and the arguments of counsel and find them all without merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed 528, 531 (1896).