279 N.J. Super. 225 (1995)
652 A.2d 732
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HARRY KITTRELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1994.
Decided January 31, 1995.
*227 Before Judges MICHELS, STERN and KEEFE.
Mark H. Friedman, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Friedman, of counsel and on the brief).
John J. Scaliti, Assistant Bergen County Prosecutor, argued the cause for respondent (John J. Fahy, Bergen County Prosecutor, attorney; Mr. Scaliti, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Harry Kittrell was convicted of distribution of cocaine, a crime of the third degree, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3) (First Count), and possession of cocaine, a crime of the third degree, in violation of *228 N.J.S.A. 2C:35-10a(1) (Second Count).[1] The trial court denied defendant's motion for a new trial and granted the State's motion to sentence defendant to an extended term under N.J.S.A. 2C:43-6f. The trial court merged defendant's conviction for possession of cocaine under the Second Count with his conviction for distribution under the First Count, and committed defendant to the custody of the Commissioner of the Department of Correction for ten years with a five-year period of parole ineligibility.[2] In addition, the trial court assessed a $1,000 Drug Enforcement Demand Reduction penalty, a $50 forensic laboratory fee and a $30 Violent Crimes Compensation Board penalty and suspended defendant's New Jersey driver's license for twenty-four months. Defendant appealed.
According to the State's proofs, on July 6, 1990, Detective Sergeant Michael Mordaga of the Hackensack Police Department's Narcotics Squad met with Hackensack Patrolman Gutierez. Detective Mordaga wanted Officer Gutierez to purchase drugs as an undercover officer because he "was not known to anyone in the community at that time." On July 9, 1990, in the early evening, Detective Mordaga again met with Officer Gutierez. At that time, Detective Mordaga supplied Officer Gutierez with a "hospital scrub type uniform" from Hackensack Medical Center, which is located a few blocks from the housing projects where Officer Gutierez was going to make his buy. Detective Mordaga also gave Officer Gutierez two $10 bills, which Detective Mordaga had photocopied previously.
At about 8:10 p.m. that day, while it was still light, the officers drove in an unmarked van to the area where Gutierez was to purchase drugs. Detective Mordaga parked the unmarked van on *229 Newman Street, approximately one block from the Railroad Avenue apartments, so that it would appear that Officer Gutierez was a hospital employee seeking to buy drugs. After leaving the van, Officer Gutierez walked down Newman Street, cut through some buildings, and then observed four to six men congregating in front of 69 Railroad Avenue. He immediately recognized defendant and his brother. He approached the group of men and asked if "anybody has anything." Defendant responded: "No problem, 20 bucks." Officer Gutierez then gave defendant the money, and defendant gave him two bags taken from the pocket of his shorts. Before leaving, Officer Gutierez asked defendant his name. Defendant responded "Big O, that's all you need to know."
Officer Gutierez returned to the van and told Detective Mordaga that he had purchased two bags of suspected drugs. Subsequent testing of the contents of the two bags revealed that they contained cocaine. Officer Gutierez also provided a physical description of the individual who had sold him drugs and indicated that the individual had identified himself as "Big O." Detective Mordaga suspected that defendant was the man who handed Officer Gutierez the bags of cocaine both because of Officer Gutierez's physical description of the man and because he knew defendant's street name was "Harry O." Detective Mordaga then drove the unmarked van past 69 Railroad Avenue. Upon pulling by that location, Detective Mordaga observed defendant, whom he had known for about ten to eleven years, and his brother Chris Kittrell. Officer Gutierez identified defendant as the one who had sold him the cocaine.
Hackensack Patrolman Toomey had been advised by Hackensack Detective Sergeant Robert Wright, who had previously signed a complaint against defendant, that an outstanding arrest warrant had been issued for defendant on June 15, 1990. On July 10, 1990, Officer Toomey observed defendant outside the apartment building of 69 Railroad Avenue. Upon seeing defendant, he called for back-up and proceeded to arrest defendant. As the officer brought defendant to the police car, defendant dropped a *230 stack of bills totalling $109 on the ground, which Officer Toomey retrieved. Among the $109 were the two "marked" bills that Officer Gutierez had used to make the drug buy from defendant the day before.
In order to protect Officer Gutierez's cover and the ongoing undercover investigation, a complaint for the July 9, 1990 drug sale was not filed until October 7, 1990. Hackensack Patrolman Thomas Aiellos, who knew of the warrant and who also knew defendant, observed defendant in front of 60 Newman Street at 8:25 p.m. that evening. After he called for backup, Officer Aiellos approached defendant, told him about the warrant, advised him that he was under arrest and read defendant his Miranda rights. At that point, defendant became "annoyed," denied that any warrant existed, resisted being handcuffed, and, after being subdued by the backup units, cursed and hollered at the police both at the scene and at police headquarters. Defendant was carrying $127 in cash and a pager when he was arrested.
Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentences on the following grounds set forth in his brief:
I. THE ADMISSION OF THE LABORATORY CERTIFICATE INTO EVIDENCE DESPITE DEFENDANT'S TIMELY NOTICE THAT THE RELIABILITY OF ITS CONTENTS WOULD BE CONTESTED AT TRIAL VIOLATED THE PROCEDURES SET FORTH IN N.J.S.A. 2C:35-19c AND DEFENDANT'S RIGHTS TO CONFRONTATION AND A FAIR TRIAL UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.
II. THE TRIAL JUDGE ERRED IN DENYING A MISTRIAL AFTER THE JURY HEARD SERGEANT MORDAGA'S ARREST ON CHARGES OTHER THAN THOSE IN THE PRESENT CASE.
III. THE INACCURATE AND OUT-DATED JURY CHARGE ON REASONABLE DOUBT VIOLATED DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW. (Not Raised Below).
IV. THE INSTRUCTION THAT THE JURORS CONTINUE DELIBERATIONS, GIVEN TWO DAYS AFTER THEY ANNOUNCED THAT THEY HAD REACHED AN "IMPASSE" AND WITHOUT ANY INQUIRY AS TO WHETHER FURTHER DELIBERATIONS COULD BE FRUITFUL, DENIED DEFENDANT THE RIGHT TO A FAIR TRIAL.
V. THE ABSENCE OF GUIDELINES AT THE TIME THE OFFENSE WAS COMMITTED RENDERS THE IMPOSITION OF AN EXTENDED TERM *231 PURSUANT TO N.J.S.A. 2C:43-6F AN EX POST FACTO VIOLATION OF THE UNITED STATES AND NEW JERSEY CONSTITUTIONS. U.S. CONST., ART. I, SEC. 10, CL. 1; N.J. CONST. (1947), ART. IV, SEC. 7, PAR. 3.
VI. DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.
Defendant, in a supplemental pro se brief, raises the following additional issues:
I. THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY REGARDING THE PAGER IN THAT THE JURY WAS REQUIRED TO DRAW A DOUBLE INFERENCE (i.e., that there was a pager, and its purpose), DEPRIVING THE DEFENDANT OF A FAIR TRIAL.
II. THE INDICTMENT WAS A "NO BILL" AND THEREFORE MUST BE DISMISSED WITH PREJUDICE.
III. THE PROSECUTOR USURPED THE FUNCTION OF THE GRAND JURY BY FAILING TO RECALL THE WITNESS TO ANSWER ITS QUESTIONS AS TO HOW THE WITNESS KNEW DEFENDANT, AND THE VERACITY OF THE CHARGES, WHEREFORE THE INDICTMENT MUST BE DISMISSED.
IV. THE FAILURE OF THE COURT TO ORDER THE READ-BACK TO BE RECORDED WAS A DENIAL OF DUE PROCESS AND THIS WARRANTS A REVERSAL OF DEFENDANT'S CONVICTION.

I.
Defendant contends that the trial court erred by allowing, over his objection, the State to introduce into evidence the laboratory certificate which identified the contents of the two bags purchased from defendant as containing cocaine. He argues that the admission of this evidence violated his constitutional rights and mandates a reversal of his convictions. We agree.
Prior to trial, defendant's original attorney filed a motion objecting to the admission of the laboratory certificate based on the confrontation clause, and claiming that the quality and quantity of the substance and analysis would be contested at trial. During trial, when defendant objected to the admission of the laboratory certificate into evidence, the State acknowledged that notice had been served in a timely fashion, but argued that it was insufficient because the "defense has to come in and say the lab report is tainted in some way. It's not enough to say they object to the lab report." The trial court overruled the objection, reasoning that *232 although the laboratory certificate was timely objected to and timely noticed, nothing had been presented to it that would challenge its admissibility in accordance with the statute. The trial court further explained that it did not appear that the nature, quantity and purity of the tested substances were legitimately disputed. At the conclusion of the evidence, the trial court instructed the jury that it could consider the laboratory certificate in determining whether the State had proven beyond a reasonable doubt that the substance allegedly purchased by Officer Gutierez was cocaine.
N.J.S.A. 2C:35-19c, in pertinent part, provides:
An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section shall not be relaxed except upon a showing of good cause. [Emphasis added].
In State in Interest of J.H., 244 N.J. Super. 207, 217, 581 A.2d 1347 (App.Div. 1990), we upheld the constitutionality of N.J.S.A. 2C:35-19, providing that it is not interpreted "to impose a burden on a defendant to present conflicting evidence in order to sustain an objection to the admission of the laboratory certificate offered by the State." In doing so, we explained:

N.J.S.A. 2C:35-19 may be construed to establish a constitutionally valid pretrial procedure for determining whether the State will be allowed to rely upon the certificate of its chemist. If the defendant does not file a timely objection to the certificate, any possible objection is waived and the certificate may be admitted. McCormick on Evidence, supra, § 52. If defendant does object, he must state specific grounds of objections under the criteria of admissibility set forth in Matulewicz. For example, a defendant may urge that the procedures involved in testing for a drug are highly complex or involve a large measure of subjectivity and consequently that an opportunity should be afforded to cross-examine the expert to determine how a particular test was conducted. A defendant also may urge that the laboratory certificate and any other supporting material submitted by the State do not contain sufficient information to determine the certificate's admissibility *233 under Matulewicz. And where there is a factual issue as to the reliability of an expert's test procedures, the State will be required to develop a record to establish the conditions of admissibility of the laboratory certificate. See State v. Matulewicz, supra, 101 N.J. at 32, 499 A.2d 1363; R.K. v. Dept. of Human Services, 215 N.J. Super. 342, 348-349, 521 A.2d 1319 (App.Div. 1987). In other words, N.J.S.A. 2C:35-19 may be construed to establish a procedural framework under which the State may ascertain before trial whether a defendant will object to the admission of a laboratory certificate and, if so, whether the certificate satisfies the tests of reliability set forth in Matulewicz.

[Id. 244 N.J. Super. at 217-18, 581 A.2d 1347].
See also State v. Roberson, 246 N.J. Super. 597, 605-06, 588 A.2d 434 (App.Div.), certif. dismissed as moot, 126 N.J. 330, 598 A.2d 889 (1991) (stating that N.J.S.A. 2C:35-19 establishes a pre-trial procedure whereby a defendant may refuse to enter into a stipulation admitting a drug-testing report into evidence).
In adopting the tests of reliability established by the Supreme Court in State v. Matulewicz, 101 N.J. 27, 499 A.2d 1363 (1985), we found that although "the Court in Matulewicz was concerned solely with the interpretation of Evidence Rules 63(13) and 63(15)(a), ... the tests for admissibility under these state evidence rules also would provide adequate `indicia of reliability' to satisfy the requirements of the Confrontation Clause." State in Interest of J.H., supra, 244 N.J. Super. at 215, 581 A.2d 1347. The Court in Matulewicz, supra, articulated the following factors concerning proof of reliability:
[P]roofs should be adduced to reflect the relative degrees of objectivity and subjectivity involved in the procedure; the regularity with which these analyses are done; the routine quality of each analysis; the presence of any motive to single out a specific analysis for the purpose of rendering an untrustworthy report, and the responsibility of each State Police chemist to make accurate and reliable analyses.
[101 N.J. at 30, 499 A.2d 1363].
There, the Court found the record inadequate to determine the reliability of the procedures utilized in preparing the police chemist's report. In remanding the case, the Court instructed that "the admissibility of the State police chemist's report must be informed by an evidential record that addresses all relevant factors." Id. at 31, 499 A.2d 1363.
*234 The Legislative Commentary to N.J.S.A. 2C:35-19c provides in part:
It is intended that the court ordinarily should admit the certificate unless it appears that the nature, quantity or purity of the tested substance is legitimately in dispute. Where it appears from the statement of objections that there is a legitimate factual dispute with respect to any relevant portion of the certificate, the court should deny admissibility of the certificate and require the State to produce the forensic chemist at trial.
[1987 Legislative Assembly Judiciary Committee Commentary to the Comprehensive Drug Reform Act (L. 1987, c. 106, § 1), reprinted in, Cannel, New Jersey Criminal Code Annotated, comment to N.J.S.A. 2C:35-19 (1994)].
Application of these principles compels the conclusion that the trial court erred in admitting the laboratory certificate analyzing the substance found in the two bags sold by defendant to the undercover officer without requiring the State to make a preliminary showing of reliability. Defendant filed a timely notice of objection on the ground that "the composition, quality and quantity of the substance submitted to the lab for analysis will be contested at trial." After this timely notice of objection, the admissibility of the certificate was never determined prior to trial as required by N.J.S.A. 2C:35-19c. During trial, defense counsel objected to the admissibility of the certificate, stating that "my cross examination of the chemist will reveal that there have been faults in the procedures." Furthermore, defendant explained that only one of the bags had been tested, while the Hackensack Police Department had requested that both bags be tested. This presented a legitimate objection; namely, it questioned why both bags of suspected cocaine were not tested. Defendant should not have been required to present conflicting evidence. See State in Interest of J.H., supra, 244 N.J. Super. at 217, 581 A.2d 1347.
In our view, the trial court erred in failing to require the State to establish an adequate foundation for the admission of the laboratory certificate. See Id. at 219, 581 A.2d 1347. Defendant was entitled to at least an evidential hearing addressing the factors set forth by the Court in State v. Matulewicz, supra, and adopted by us in the specific context of N.J.S.A. 2C:35-19 in State in Interest of J.H., supra. Because this evidence constituted an *235 essential element of the State's case, defendant's conviction must be reversed and the matter remanded to the trial court for a new trial. See State In Interest of J.H., supra, 244 N.J. Super. at 219, 581 A.2d 1347. See also Matulewicz, supra, 101 N.J. at 30-33, 499 A.2d 1363.

II.
Defendant also contends that the trial court erred by admitting into evidence Detective Mordaga's testimony concerning defendant's beeper, particularly the detective's testimony that beepers are used by drug traffickers. Defendant argues that this evidence was not relevant and prejudiced his right to a fair trial.
At the time of trial, Evid.R. 56(1) (now N.J.R.E. 701), was the evidence rule which concerned opinion testimony of lay witnesses.[3]Evid.R. 56(1) provided:
If a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue.
Pursuant to this rule, "[c]ourts in New Jersey have permitted police officers to testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be deemed necessary." State v. LaBrutto, 114 N.J. 187, 198, 553 A.2d 335 (1989). In order to admit lay opinion testimony under the rule, the trial court must determine that (1) "the witness' opinion is `rationally based' on the witness' personal perception," and (2) "the opinion will be helpful to an understanding of the witness' testimony or the case in general." Ibid. See also Trentacost v. Brussel, 164 N.J. Super. 9, 19-20, 395 A.2d 540 (App.Div. 1978), aff'd, 82 N.J. 214, 412 A.2d *236 436 (1980); State v. Jackson, 124 N.J. Super. 1, 304 A.2d 565 (App.Div.), certif. denied, 63 N.J. 553, 310 A.2d 468 (1973).
Here, the detective's testimony exceeded the bounds of proper lay opinion testimony and crossed over into the realm of expert testimony. The trial court should have qualified him as an expert in drug-related investigations. The officer did not testify as to his personal observation of the defendant using a beeper. He did not even arrest defendant on the date he possessed the beeper, nor did he observe it in defendant's possession. Rather, Detective Mordaga testified generally, based on his extensive experience, that drug dealers use beepers in their trade. This type of testimony is more akin to expert testimony. Cf. United States v. McDonald, 933 F.2d 1519, 1522 (10th Cir.), cert. denied, 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991) (jury could not understand the significance of 6.7 grams or rock cocaine, the single-edge razor blade, the beeper and the loaded pistol "without the particular background knowledge of how a drug dealer works."); State v. Odom, 116 N.J. 65, 71-76, 560 A.2d 1198 (1989) (defendant's intent or purpose in connection with possession of drugs was appropriate subject of expert testimony where subject was beyond understanding of the average person).
The testimony clearly involved "specialized knowledge" based upon the detective's "experience, training [and] education." Evid.R. 56(2) (now N.J.R.E. 702). Prior to the detective giving this testimony, however, a proper foundation had been laid as to the detective's thousands of drug related arrests as well as his experience and training in this area for over sixteen years. Because enough evidence was presented to qualify Detective Mordaga as an expert in this area, the trial court's error in failing to specifically qualify him as an expert was harmless.
The question, therefore, is whether the trial court erred in admitting this evidence. Our analysis as to the admissibility of the detective's testimony begins with determining whether the evidence was relevant. Evid.R. 1(2) (now N.J.R.E. 401) defines relevant evidence as "evidence having any tendency in reason to *237 prove any material fact." See State v. Hutchins, 241 N.J. Super. 353, 358-59, 575 A.2d 35 (App.Div. 1990). Based on the detective's testimony, possession of the beeper had the tendency of proving that defendant was involved in dealing drugs, and, therefore, was relevant.
The more difficult question is whether this other act evidence  defendant's possession of a beeper on the date of his arrest  was admissible to prove that defendant was dealing drugs on a previous date. The beeper was found in defendant's possession on October 7, 1990, the date of his arrest. The date the State alleged that defendant committed the drug offenses was July 9, 1990, almost three months earlier. The manner in which the State presented the detective's testimony concerning the beeper had the tendency of impugning defendant's character, thus placing this other act evidence within the ambit of Evid.R. 55 (now N.J.R.E. 404(b)). See United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988) ("To fall within the scope of [Fed.R.Evid.] 404(b), an act need not be criminal, so long as it tends to impugn a defendant's character."). See also State v. Rogers, 918 F.2d 207, 212 n. 3 (D.C. Cir.1990) (declining to address the questions whether Fed. R.Evid. 404(b) applies only to "bad" or criminal acts and if so, whether possession of a beeper constitutes such an act); State v. Moore, 113 N.J. 239, 275, 550 A.2d 117 (1988) (stating that "the danger that Evidence Rules 55 [now N.J.R.E. 404(b)] and 47 seek to prevent is that a defendant will be prejudiced by evidence of other acts such that a jury will convict because he or she is a bad person disposed to commit crime."). Although admission of the beeper by itself may have not placed this evidence within the scope of Evid.R. 55, the manner in which the State presented the evidence through the detective's testimony unquestionably placed the evidence within the scope of the rule. Detective Mordaga's testimony clearly implied that beepers are tools that drug dealers use in plying their trade.
Evid.R. 55, which governed the admissibility of other wrongful acts at the time of trial, provided:

*238 Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.
Here, although the testimony concerning the beeper tended to show defendant's propensity to commit the crimes charged, more can be implied from such testimony. Namely, the possession of a beeper could be relevant to prove intent to distribute and, therefore, admissible for a proper purpose under Evid.R. 55. See United States v. Brown, 16 F.3d 423, 431 (D.C. Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 257, 130 L.Ed.2d 178 (1994) (finding admissibility of pager relevant to show intent to distribute under Federal Rule of Evidence 404(b)).
However, it must be determined whether testimony concerning the beeper discovered on defendant fully three months after the date defendant was charged with possession and distribution of cocaine can be used to show defendant's intent on this previous date. Under the circumstances here, we think that it cannot. In State v. Cofield, 127 N.J. 328, 605 A.2d 230 (1992), our Supreme Court set forth the following rule of general application "in order to avoid the over-use of extrinsic evidence of other crimes or wrongs:"
1. The evidence of the other crime must be admissible as relevant to a material issue;
2. It must be similar in kind and reasonably close in time to the offense charged;
3. The evidence of the other crime must be clear and convincing; and
4. The probative value of the evidence must not be outweighed by its apparent prejudice.
[Id. at 338, 605 A.2d 230 (citation omitted)].
In this case, the requirements of the second and fourth prong of the Court's test have not been satisfied to admit this evidence as to defendant's intent to distribute. The police actually arrested defendant three months after the date the State alleged defendant committed the drug offenses. The date of the arrest was when the beeper was found on defendant's person, and that was the *239 beeper upon which Detective Mordaga based his testimony. Defendant's subsequent possession of the beeper is not close enough in time to shed significant light on whether defendant intended to distribute drugs on this earlier date.
Nor does possession of a beeper by itself present a "sufficient identity of features to evidence" drug dealing on an earlier date. See United States v. Zarintash, 736 F.2d 66, 72 (3d Cir.1984). There was no evidence that defendant was committing an illegal act on the date the police arrested him with the beeper. Many people carry beepers for a wide variety of benign purposes. For example, doctors, lawyers, legal-assistants and frequently, even young children carry them as a means for others to contact them. Defendant was merely found with his beeper fully three months after the date the State alleged he was dealing drugs. This, by itself, is not enough to permit the jury to draw an inference that defendant dealt drugs on this earlier date.
Additionally, the testimony concerning the beeper should have been excluded because "its probative value is substantially outweighed by the risk of ... undue prejudice...." Evid.R. 4 (now N.J.R.E. 403). See Cofield, supra, 127 N.J. at 338, 605 A.2d 230. The detective's testimony implying that drug dealers use beepers, while relevant on the issue of intent, was outweighed by its prejudicial impact. The jury clearly could have drawn the impermissible inference that defendant also was involved in dealing drugs on the date of his arrest and, therefore, must have been so involved on the previous date. See State v. Medina, 254 N.J. Super. 668, 683-85, 604 A.2d 197 (App.Div. 1992) (concerning an offense under N.J.S.A. 2C:33-20 where defendant was charged with a simultaneous drug offense). Here, defendant was not charged with any drug offense at the time he possessed the beeper.
Finally, even if properly admissible, the trial court should have instructed the jury as to the limited weight that may be given to the detective's testimony that drug dealers use beepers. Cofield, supra, 127 N.J. at 341, 605 A.2d 230; State v. Rose, *240 112 N.J. 454, 489-90, 548 A.2d 1058 (1988); State v. Young, 181 N.J. Super. 463, 473, 438 A.2d 344 (App.Div. 1981). The trial court's limiting instruction "should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." State v. Stevens, 115 N.J. 289, 304, 558 A.2d 833 (1989). In Stevens, supra, the Supreme Court emphasized that the trial court should "state specifically the purposes for which the evidence may be considered and, to the extent necessary for the jury's understanding, the issues on which such evidence is not to be considered." Id. at 309, 558 A.2d 833. The limiting instruction must be given even if it is not requested by the prejudiced party. State v. Clausell, 121 N.J. 298, 323, 580 A.2d 221 (1990).
Here, the trial court failed to give any limiting instruction. The trial court should have instructed the jury that the detective's testimony concerning the beeper found on defendant three months after the charged crime was inadmissible to prove that defendant is likely to deal drugs. A real danger existed that the jury would draw an impermissible inference that defendant again was dealing drugs on the date he was arrested with the beeper and, therefore, must have been drug dealing on the previous date. Stated simply, the jury could have convicted defendant based on Detective Mordaga's testimony that drug dealers use beepers. Consequently, the trial court erred in admitting this evidence requiring a reversal of defendant's convictions and a remand for a new trial. Given defendant's acquittal on the resisting arrest charge of October 7, 1990, we do not know what evidence, if any, will be presented at the retrial. In any event, if the State offers evidence of the October arrest for the July offenses, evidence of defendant's possession of the beeper shall not be admitted.

III.
Since we have reversed defendant's convictions and have remanded the matter to the trial court for a new trial, it is not *241 necessary for us to reach or consider the other issues raised by defendant through counsel or in his pro se supplemental brief.

IV.
Accordingly, the judgment of conviction and order for commitment under review are reversed and the matter is remanded to the trial court for a new trial.
NOTES
[1] These offenses occurred on July 9, 1990. Defendant was found not guilty of resisting arrest, N.J.S.A. 2C:29-2, an offense alleged to have occurred on October 7, 1990.
[2] The propriety of the merger of defendant's conviction for possession of cocaine with his conviction for distribution has not been raised before us.
[3] Since this matter was tried before July 1, 1993, the effective date of the revised New Jersey Rules of Evidence, on retrial because of our reversal, the revised rules of evidence will govern the new trial. However, there are no material differences between the old and the revised rules for purposes of the issues before us.